In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-11-00382-CR
_____

## RAMIRO LANDAVERDE CONTRERAS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CR28208**

## MEMORANDUM OPINION

In this appeal, we address the defendant's arguments that he received ineffective assistance of counsel and that the trial court abused its discretion by denying his motion for continuance and motion for new trial. The defendant, Ramiro Landaverde Contreras, appeals his conviction for capital murder that resulted in his receiving an automatic life sentence. *See* Tex. Penal Code Ann. § 12.31(a)(2) (West 2011) (providing punishment of life without parole in capital felony cases where the State does not seek the death penalty), § 19.03(a)(2) (West

1

Supp. 2012) (defining capital murder to include a murder committed in the course of committing or attempting to commit burglary). In his first issue, Contreras contends he received ineffective assistance because the attorney who represented him at trial had a conflict of interest. In issue two, Contreras argues the trial court's denial of his motion for continuance prevented counsel of his choice from representing him at trial and prevented a reasonable investigation of his potential claim that he was not sane when the offense occurred. In issue three, Contreras argues that his motion for new trial raises questions challenging the methodology used by the State's psychiatrist (whose report indicates that Contreras was sane when he committed the offense), and questions regarding whether Contreras was sane when the offense occurred. According to Contreras, these questions required the trial court to grant his motion for new trial. In Contreras's fourth issue, he argues the cumulative effect of the trial court's erroneous rulings was so great that he is entitled to receive another trial. After carefully reviewing the record and the issues Contreras raises in his appeal, we conclude that Contreras has not demonstrated the trial court committed error. We affirm the trial court's judgment.

## Background

In this appeal, Contreras does not dispute that he killed Barbara Swearingen, his mother-in-law, in her home on September 23, 2008. At the time of the murder,

Contreras was estranged from his wife, Amy. Amy, the couple's four children, and two of Amy's siblings, lived at Barbara's house and were there when Barbara was murdered.

Viewing the evidence in the light most favorable to the jury's verdict, Contreras entered Barbara's home through the back door without Barbara's or Amy's consent. After shooting Barbara in the bathroom, he shot his brother-in-law in a bedroom, wounding him in the shoulder. Contreras then severely beat Amy's sister in the living room. Amy's sister and brother survived their injuries. Contreras then took Amy, who he blindfolded, and their children to a house; Contreras released them later that afternoon. Eighteen days later, Contreras was arrested for Barbara's murder.

Approximately thirty-three months later, Contreras stood trial for Barbara's murder. On June 1, 2011—five days before trial—Contreras filed a motion for continuance, which requested that the trial court allow another attorney to represent Contreras at the impending trial and suggested that if the motion were granted, Contreras's new attorney would need time to conduct an investigation, interview witnesses, and have Contreras evaluated by an independent forensic psychologist. Contreras's motion to continue acknowledges that prior to trial, he had been interviewed by two forensic experts, a psychiatrist and a psychologist.

3

Their reports were available to the trial court in deciding the motion to continue. The report of the psychiatrist, who was an expert selected by the State, states that Contreras was not insane when he committed the murder; the report of the psychologist, an expert selected by the attorney representing Contreras before Contreras asked that another attorney be allowed to represent him, is silent regarding whether Contreras was insane when he committed the murder.

After hearing the arguments of the various attorneys, the trial court denied Contreras's motion for continuance. But, in denying the motion, the trial court stated that it would allow the substitute of counsel if Contreras's new counsel was ready to pick a jury and go to trial. On that condition, the attorney asking to be substituted advised that he would not be ready for a trial commencing in five days. Substitute counsel also suggested to the court that Contreras would "be best served" if the attorney representing Contreras continued to represent him through the trial.

## Conflict of Interest

In his first issue, Contreras contends that a conflict of interest resulted in his attorney providing him with ineffective assistance of counsel. In his appeal, Contreras argues that trial counsel built a record to insulate trial counsel from

claims of ineffective assistance due to trial counsel's alleged failure to reasonably investigate Contreras's possible insanity defense.

When considering ineffective assistance claims arising from an alleged conflict of interest, an appellant must show that an actual conflict of interest existed and that "trial counsel actually acted on behalf of those other interests during the trial." *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). An actual conflict exists if counsel "'is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest.'" *Id.* (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)).

But, the existence of a potential conflict that is alleged to arise from a desire to avoid a later claim of ineffective assistance does not necessarily mean trial counsel is operating under an actual conflict. *See Monreal*, 947 S.W.2d at 565 (holding that trial attorney's interest in avoiding a future claim of ineffective assistance did not prevent trial counsel from advancing the client's interest in receiving a fair trial). Contreras has never claimed that he did not shoot Barbara, and he did not defend on that theory at his trial. Instead, trial counsel attempted to establish that Contreras was not guilty of capital murder because Barbara's murder

5

was not committed in the course of committing a burglary—a claim requiring the jury to believe that Contreras had Amy's permission to enter Barbara's house.

In his appeal, Contreras contends that trial counsel's duty required a more thorough investigation regarding his potential insanity defense. According to Contreras, the conflict is demonstrated because his trial attorney elicited testimony from witnesses tending to show that Contreras's belief that Amy gave him permission to enter Barbara's home was rational based on statements he claimed Amy made to him. Contreras now characterizes trial counsel's questions as questions that were designed to protect against a future ineffective assistance claim, not as questions intended to elicit testimony to show that Contreras thought he had Amy's consent to enter the home.

In our opinion, the evidence that Contreras points to demonstrates that trial counsel was burdened by a potential and not an actual conflict. For example, the record does not demonstrate that trial counsel did not investigate Contreras's potential insanity defense. Prior to the trial, Contreras's attorney filed a motion to retain a psychiatrist or psychologist. According to the motion, the expert was being retained to determine Contreras's "sanity at the time of the act alleged[.]" In 2009, the trial court granted Contreras request and authorized trial counsel to obtain a mental health expert. The reason for the authorization, according to the trial court's

6

order, was to assist Contreras "in the investigation, evaluation, preparation and presentation of mental health issues in this case." Further, the reports of the psychiatrist and the psychologist available to the trial court do not state that Contreras was insane when Barbara's murder occurred. Although the report of Contreras's psychologist is silent regarding her findings on Contreras's sanity, her silence does not prove that she overlooked the issue; instead, she could have chosen not to comment on the matter, as revealing her opinion might not have been in Contreras's interest. Additionally, the affidavit of a psychiatrist obtained by appellate counsel after trial and attached to the motion to continue fails to state that Contreras was insane when he murdered Barbara. Instead, that affidavit, from an expert who was retained after the trial, indicates the expert had not yet reached an opinion about whether Contreras was insane when he committed the offense.

The record before us does not reveal that trial counsel was ineffective. The questions posed by Contreras's trial counsel are the types of questions consistent with a trial strategy designed to show that Amy consented to Contreras entering Barbara's home. On this record, the arguments Contreras advances in his appeal reflect the existence of only a potential conflict, not an actual conflict. We conclude that appellate counsel has failed to show that trial counsel had an actual

7

conflict of interest. *See Cuyler*, 466 U.S. at 349-50. We overrule Contreras's first issue.

## Denial of Continuance and New Trial

In his second and third issues, Contreras argues the trial court abused its discretion when it denied his pretrial motions for continuance and new trial. In his motion for continuance, filed five days prior to the commencement of trial, Contreras asked for a 120-day continuance so that a new attorney would have time to have Contreras evaluated by an expert to determine whether an insanity defense could be raised in Contreras's defense. "We review a trial court's ruling on a motion for continuance for abuse of discretion." *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). A trial court's ruling denying a motion for new trial is also reviewed under an abuse of discretion standard. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

To establish that a denial of a motion for continuance constitutes an abuse of discretion, a defendant must show the ruling actually prejudiced his case. *Gallo*, 239 S.W.3d at 764. An abuse of discretion occurs, "'only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had.'" *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010) (quoting George E. Dix & Robert O. Dawson*, 42 Tex.*

8

*Practice: Criminal Practice & Procedure* § 28.56 (2d ed. 2001)). Generally, to prove prejudice, the proponent of the motion to continue will "'produce evidence as to what additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted.'" *Id.* Additionally, "in order to show reversible error predicated on the denial of a pretrial motion for continuance, a defendant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him." *Id.* at 843. Error is most likely demonstrated by "'a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial.'" *Id.*

To establish that a trial court abused its discretion in denying a motion for new trial, the party appealing the adverse ruling must show that no reasonable view of the record could support the trial court's ruling. *See Webb*, 232 S.W.3d at 112. (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)). In reviewing the evidence, we are not to substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Id.* The evidence is reviewed in the light most favorable to the trial

court's ruling, and the ruling will be upheld if it is within the zone of reasonable disagreement. *Id.*

In his motion to continue, which the State opposed, Contreras asserted that if given additional time, newly retained counsel would "engage in discovery, interview witnesses, consult experts, and prepare a defense to the charges." Contreras's motion also states that he wanted a continuance so that his attorneys could further investigate his mental health. The record of the hearing on Contreras's motion to continue reflects the trial court acknowledged the trial had been set for several months and that Contreras had been in jail for over two and half years. The trial court was also informed that Contreras had contacted the attorneys whom he sought to substitute for trial counsel approximately one month before the trial setting.

When the motion to continue was filed, the record reflects that Contreras had been evaluated by two mental health experts, and that the trial court was aware of the content of their reports. Dr. Scarano, a psychiatrist retained by the State, reports that Contreras "does not meet the Texas Penal Code's affirmative defense of insanity" and concludes that Contreras "knew what he was doing and knew what he was doing was wrong." The report of Dr. Kessner, a psychologist retained by the defendant, is conspicuously silent concerning whether Contreras was insane at

the time of the offense. At the hearing on the motion to continue, Contreras presented no expert testimony to prove that he was insane when he killed Barbara.

The motion for new trial is likewise unsupported by evidence showing that Contreras was insane when he committed the murder. Instead, Dr. David Self, a psychiatrist whose affidavit was attached to the motion for new trial, criticized Dr. Scarano's and Dr. Kessner's expert reports and their respective methodologies. Additionally, Dr. Self's affidavit reflects that he did not examine Contreras, and that he did not review all of the documentation regarding the case; in his affidavit, Dr. Self concludes: "I cannot opine regarding the actual viability of an insanity defense in this case[.]" Thus, the trial court was never presented with viable evidence showing that additional time would have allowed Contreras to present an insanity defense.

On the record before us, we hold that Contreras has not shown that the trial court abused its discretion by denying Contreras's motions for continuance and for new trial. *See Gallo*, 239 S.W.3d at 764; *Webb*, 232 S.W.3d at 112. We overrule Contreras's second and third issues.

### Cumulative Effects

In his last issue, Contreras contends his conviction should be reversed because of the cumulative impact of the errors in issues one through three.

Having already determined that no error exists in issues one through three, there is also no cumulative error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."); *Modica v. State*, 151 S.W.3d 716, 727 (Tex. App.—Beaumont 2004, pet. ref'd). Contreras's fourth issue is overruled. Accordingly, we affirm the trial court's judgment.

      AFFIRMED.

_____<br>
HOLLIS HORTON<br>
Justice

Submitted on December 27, 2012
Opinion Delivered April 24, 2013
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.